UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHAOS LACROSSE, LLC § <br> § <br> Plaintiff, § <br> § <br> v. §      CIVIL ACTION No. 4:23-cv-399 <br> § <br> § <br> § <br> § <br> PREMIER LACROSSE LEAGUE, INC § <br> § <br> Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Chaos Lacrosse, LLC asserts claims against Defendant Premier Lacrosse League, Inc. for unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) (Section 43(a)(1)(A) of the Lanham Act) and for unfair competition/passing off, trademark infringement, and unjust enrichment under Texas law.

**I. PARTIES AND SERVICE**

1.   Plaintiff Chaos Lacrosse, LLC ("Plaintiff" or "Chaos") is a Texas limited liability company with a principal place of business at 11013 Jereme Trail, Frisco, TX 75035. Plaintiff owns all right, title, and interest in and to the marks used by its licensees, including those described herein.

2.   Defendant Premier Lacrosse League, Inc. ("Defendant" or "Premier") is a Delaware Corporation with a principal place of business at 12615 N. Nash St., Unit 202, El Segundo, CA 90245. Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 4(h)(1)(B), Premier may be served by delivering a copy of the summons and of the complaint to its appointed registered agent, CT Corporation System, 1999 Bryan St, Suite 900, Dallas, TX 75201-3136.

## II. JURISDICTION AND VENUE

3. This is an action for trademark infringement and unfair competition arising under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. Section 1051, *et seq.*, including Section 1125(a)(1), as well as trademark infringement, unfair competition, and unjust enrichment under Texas law.

4. This Court has original jurisdiction over the subject matter of any Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and 1338. Further, there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Therefore, this Court also has jurisdiction under 28 U.S.C. § 1332(a)(1). This Court has subject-matter jurisdiction over the Texas state-law claims in this action under 28 U.S.C. § 1367, because these claims arise out of the same transactions and occurrences giving rise to the federal Lanham Act claim(s).

5. The Court has personal jurisdiction over Premier because a substantial number of acts that are the subject Plaintiff's claims, including trademark infringement, were committed by Premier in the State of Texas and in this judicial district.

6. Under 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because a substantial part of the events giving rise to the claims of this action occurred and are occurring in this judicial district. Venue is also proper under 28 U.S.C. § 1391(c)(3), because the Defendant Premier is registered as a Foreign For-Profit Corporation in the State of Texas. As set forth in more detail below, Premier has marketed its services to citizens of this State and, in particular, to citizens of this judicial district, through various forms of advertising and promotion, including holding sporting events, sports camps, and other activities in this judicial district.

### III. FACTUAL BACKGROUND

A.   THE HISTORY OF THE MARKS AT ISSUE

7.   Chaos Lacrosse is a company that provides a club lacrosse program for youth and high school players. Chaos Lacrosse developed its nationally known club lacrosse program based on a style of lacrosse created by Coach Bill Pilat at Roanoke College that stands for "Constantly Harass And create Opportunities to Score."

8.   Chaos Lacrosse has been consistently using marks displaying CHAOS LACROSSE since at least as early as June 2013 in connection with its lacrosse coaching services. Since this time, Chaos Lacrosse has become a successful contributor to the recruiting process of hundreds of student athletes interested in playing college lacrosse and even professional lacrosse. Dozens of Chaos Lacrosse players have continued their lacrosse careers in NCAA, MCLA, and NAIA lacrosse.

9.   On November 16, 2018, Chaos Lacrosse filed application SN 88197142 for the mark Chaos Lacrosse and Locomotive Design in connection with "professional coaching services in the field of Lacrosse" in International Class 41. The application was filed based on actual use in U.S. commerce. On January 18, 2022, the application matured into Registration No. 6617482. Attached as **Exhibit A** is a printout from the Trademark Status & Document Retrieval ("TSDR") database showing the current status and title of Reg. No. 6617482, which is shown below:



10. On November 16, 2018, Chaos Lacrosse filed application SN 88197071 for the mark Chaos Lacrosse and Design in connection with "coaching in the field of sports" in International Class 41. The application was filed based on actual use in U.S. commerce. On January 18, 2022 the application matured into Registration No. 6617481. Attached as **Exhibit B** is a printout of the TSDR



database showing the current status of Reg. No. 6617481, which is shown below:

11. Collectively, the Chaos Lacrosse and Locomotive Design mark and Chaos Lacrosse and Design mark are referred to as the "Senior Marks" or the "Chaos Lacrosse Marks." Both of the Chaos Lacrosse Marks are registered on the Principal Register, as shown in Exhibits A & B.

12. Chaos Lacrosse first adopted the Chaos Lacrosse Marks for use in connection with lacrosse coaching services at least as early as June 2013. Use of the marks has been continuous since then, and continues to the present day. Since the Chaos Lacrosse Marks were adopted, Petitioner has invested substantial amounts of money, time, and effort in developing, establishing, promoting, and selling its products and services in connection with the Chaos Lacrosse Marks. Plaintiff uses the Chaos Lacrosse Marks on player uniforms, bags, apparel and other lacrosse equipment, in addition to advertising and marketing its lacrosse coaching services online, at tournaments, and through advertisements.

13. In addition to its registered rights, Chaos Lacrosse has developed strong common law trademark rights and substantial goodwill in its Chaos Lacrosse Marks through years of continuous use.

14. Chaos Lacrosse markets services bearing the Chaos Lacrosse Marks to youth lacrosse players across the United States, and enters teams in competitive lacrosse tournaments across the United States, including at least twenty-three different states since Chaos Lacrosse began in 2013.

15. On or about February 26, 2019, Defendant filed an application for the mark CHAOS LC and Design, SN 88316497, for use in connection with "clothing intended to create an association with a professional lacrosse team, namely, shirts, pants, sweatshirts, shorts, tops, bottoms, jackets, pajamas, socks, scarves, hats, sweatpants, lacrosse jerseys, athletic uniforms" in International Class 25 and "Entertainment services, namely, organizing and conducting athletic competitions and games in the field of lacrosse; entertainment services in the nature of on-going television and radio programs in the field of lacrosse and rendering live lacrosse games and lacrosse exhibitions for the purpose of distribution through broadcast media; the production and distribution of radio and television broadcasts of lacrosse games, lacrosse events and programs in the field of lacrosse; production of television programs in the field of lacrosse matches; conducting and arranging lacrosse clinics, lacrosse camps, and lacrosse events; fan club services; entertainment services, namely, providing a website featuring non-downloadable videos in the field of television highlights, interactive television highlights, radio programs, radio highlights, and audio recordings in the field of lacrosse, and lacrosse news in the nature of information, statistics and trivia about lacrosse; Ticket reservation and booking services for sporting events" in International Class 41 (the "Defendant's Goods and Services"). The CHAOS LC and Design application was filed based on an intent-to-use the CHAOS LC and Design mark with the applied-for goods and services.

16. On or about February 25, 2019, Defendant filed an application for the mark CHAOS, Serial No. 88/315,323, for use in connection with Defendant's Goods and Services. The CHAOS application was filed based on an intent-to-use the CHAOS mark with the applied-for goods and

services.

17. On May 5, 2020, both the applications for CHAOS LC and Design and CHAOS matured to registration and were assigned Registration Nos. 6,048,885 and 6,048,870, respectively (Collectively, "Defendant's Marks" or the "Junior Marks").

**B.      Evidence of Actual Confusion**

18. Premier not only uses Defendant's Marks to promote its professional lacrosse league, it also uses them to promote its youth academy, in direct competition with the coaching services provided by Plaintiff. The Premier currently fields eight professional teams, and each of those teams has its own web page. One of Premier's eight lacrosse teams is named "Chaos." For example, a review of Premier's website shows that the team page for "Chaos," in addition to having statistics for the professional team, shows a Chaos team for the "Junior Premier Championships" and includes a depiction of a player wearing a "Chaos" jersey in a photograph that includes the Premier Junior Championships Logo :



Chaos Lacrosse Team, "Chaos," *available at* https://premierlacrosseleague.com/teams/chaos (last visited April 14, 2023).

19. Premier also markets merchandise on its team website for its "Chaos" team. Each article of clothing includes the word "Chaos," and some of the logos in use are substantially identical to Plaintiff's "Chaos Lacrosse and Design" mark:



*See id.*, "Chaos Gear," (emphasis added).

20. Defendant's use of "CHAOS," in promoting Premier activities, events, merchandise, and broadcasts is a use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's Chaos Lacrosse Marks which have caused actual confusion in the Lacrosse community.

21. For example, Plaintiff registered teams to compete in the Austin Lacrosse Invitational, scheduled for June 9-11, 2023. The tournament coordination staff sent a representative advertisement to Plaintiff that shows the event and the competing teams. Instead of Plaintiff's registered mark/team

logo,



the organizer evidenced their confusion by instead using Defendant's "Chaos LC & Design" mark:



22. This is not the only incident of confusion. In fact, since Premier's aggressive promotion of its professional league, there have been multiple incidents of other teams accusing Plaintiff and its players of "copying" the Premier "Chaos" name in a classic example of reverse confusion by a junior holder of a mark.

23. Premier has been aware of Plaintiff's Chaos Lacrosse Marks since at least August 16, 2022, and likely far earlier. In fact, Plaintiff filed a petition to cancel Premier's Junior Marks with the Trademark Trial and Appeals Board on August 16, 2022, which is currently pending.

### IV. PLAINTIFF'S CAUSES OF ACTION

**A.  COUNT 1 — TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)(A) (LANHAM ACT § 32)**

24. Plaintiff realleges the factual allegations contained in the foregoing paragraphs.

25. Premier, in connection with advertising, marketing, and branding of its lacrosse teams, competitions, and training, has since at least February 2019, without the consent of Plaintiff Chaos Lacrosse, used in commerce and continues to use in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of the Chaos Marks in connection with the sale, offering for sale, distribution, or advertising of goods and/or services or in connection with which, such use is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114(1)(a) (Lanham Act § 32).  *See* "Premier Lacrosse League Announces Names, Logos for its 6 Teams," https://sports.nbcsports.com, February 26, 2019, *available at* https://sports.nbcsports.com/2019/02/26/premier-lacrosse-league-announces-names-logos-for-its-6-teams/ (last visited May 2, 2023).

26. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, and FEDERAL RULE OF CIVIL PROCEDURE 65(a), Premier should be preliminarily enjoined as set forth in Plaintiff's Application for Preliminary Injunctive Relief, which is being filed concurrently

herewith. Further, following a trial on the merits,[1] Premier should be permanently enjoined from using "Chaos," or any confusingly similar variation thereof, alone or in combination with other words, terms, names, symbols, or devices, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, or in advertising or signage, event, in meta tag data (including, for example, in connection with search engine optimization techniques), or otherwise, to market, advertise, or identify Premier or its competing goods or services related to the sport of lacrosse anywhere in the United States.

27. Under 15 U.S.C. § 1117(a) (Lanham Act § 35), Plaintiff is entitled to recover from Premier: (i) Premier's profits, (ii) the damages sustained by Chaos, and (iii) the costs of the action. Due to the knowing, intentional, and purposeful nature of Premier's conduct, Chaos seeks three times the amount of its actual damages. Further, if the Court finds that the amount of recovery based on profits is inadequate, Chaos asks that the Court in its discretion enter such sum as the Court shall find to be just, according to the circumstances of the case. Further, this is an exceptional case. Accordingly, Chaos is entitled to an award of its reasonable attorney's fees as the prevailing party.

**B. COUNT 2 — UNFAIR COMPETITION UNDER 15 U.S.C. § 1125 (LANHAM ACT § 43)**

28. Chaos realleges the factual allegations contained in the foregoing paragraphs.

29. Premier has, since February 2019, in connection with goods and services, used in commerce false or misleading description of facts, or false or misleading representations of facts, which are likely to cause confusion as to the origin, sponsorship, or approval of their goods by another person; or, in commercial advertising or promotion, misrepresented the nature,

---

[1] Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 65(a)(2), "the court may advance the trial on the merits and consolidate it with the [preliminary injunction] hearing."

characteristics, or qualities of their or Plaintiff's goods or commercial activities. Plaintiff believes that it is, or likely to be, damaged by such acts. Also, Defendant has made false designations of origins of their product with respect to using "CHAOS" as a trademark, thereby identifying their product with Plaintiff as a source.

30. Under 15 U.S.C. § 1117, Plaintiff seeks Defendant's profits, damages sustained by Plaintiff since May 2019, and costs of this action. Further, under the circumstances of this case, Plaintiff seeks trebling of the actual damages. Further, if the Court should find that the recovery based on profits is inadequate, plaintiff prays that the Court will in its discretion enter judgment for such a sum as the Court shall find to be just.

31. Because of the blatant and willful nature of Defendant's misrepresentations, Plaintiff submits this is an exceptional case and seeks its reasonable attorneys' fees.

C. **COUNT 3 – COMMON LAW UNFAIR COMPETITION**

32. Plaintiff realleges the factual allegations contained in the foregoing paragraphs.

33. Since February 2019, Defendant has engaged in unfair competition with Plaintiff through violations of statutory obligations and/or trade disparagement, thereby, on information and belief, obtaining profits that would otherwise have gone to Plaintiff and thereby damaging Plaintiff.

34. Defendant's actions have been actuated by fraud and/or malice.

35. Plaintiff seeks an award of exemplary damages under the provisions of Chapter 41, Texas Civil Practices and Remedies Code.

D. **COUNT 4 — UNJUST ENRICHMENT UNDER TEXAS LAW**

36. Plaintiff realleges the factual allegations contained in the foregoing paragraphs.

37. As set forth above, Defendant Premier uses one or more Chaos's Marks and

confusingly similar variations thereof as an integral part of marketing Premier's competing lacrosse goods and services. Premier has received and is receiving a direct pecuniary benefit from these unlawful acts. Premier has been unjustly enriched to Chaos's detriment. As a result, Chaos is entitled to recover its actual damages caused by Premier's unjust enrichment. Alternatively, or in addition thereto, Chaos is entitled to disgorgement of Premier's ill-gained and unjust profits.

## V. PRELIMINARY AND PERMANENT INJUNCTION

38. Plaintiff realleges the factual allegations contained in the foregoing paragraphs.

39. Chaos is entitled to a preliminary injunction, and following a trial on the merits,[2] Premier should be *permanently* enjoined from using "Chaos" or any confusingly similar variation thereof, alone or in combination with other words, terms, names, symbols, or devices, as a trademark, service mark, corporate name, trade name component, team name, domain name or domain name component, or in advertising or signage, in meta tag data (including, for example, in connection with search engine optimization techniques), or otherwise, to market, advertise, or identify Premier, any of its six professional lacrosse teams, any of its junior lacrosse activities, and any of Premier's competing lacrosse goods and services.

40. Chaos is entitled to preliminary injunctive relief because (1) it is substantially likely to succeed on the merits of its claims, including its claim for unfair competition under the Lanham Act; (2) it will suffer immediate and irreparable injury in the absence of injunctive relief – injury for which it has no adequate remedy at law; (3) the balance of the equities tips in its favor; and (4) the public interest would be served by a preliminary injunction.

41. As detailed above, Chaos is likely to succeed on the merits of its claims. Premier

---

[2] Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 65(a)(2), "the court may advance the trial on the merits and consolidate it with the [preliminary injunction] hearing."

is, among other things, using confusingly similar variations of Plaintiff's distinctive Marks, including its "CHAOS LC and Design" and "CHAOS" marks to promote, advertise, and offer identical services, namely, lacrosse-related goods and services, in a manner that is likely to cause confusion, and has in fact caused confusion. Premier has no license to do so and is therefore infringing Plaintiff's Marks and engaging in unfair competition.

42. In a trademark infringement case, a substantial likelihood of confusion constitutes a *prima facie* case of irreparable injury. When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's services constitutes immediate and irreparable harm. The injury lies in the fact that the plaintiff no longer controls its own reputation and goodwill. Here, Chaos will suffer immediate and irreparable harm if Premier is permitted to: continue using the Junior Marks. Plaintiff faces multiple injuries, including the threat of losing goodwill related to Plaintiff's reputation and services, and injury flowing from the fact that Plaintiff cannot control its own reputation and goodwill. In that regard, Chaos faces a substantial threat of immediate and irreparable harm in the loss of control over its Chaos Lacrosse Marks, and Premier's conduct threatens to eviscerate the goodwill Plaintiff's licensees have cultivated over the past 10 years. Because Chaos cannot control Premier's use of the Marks, Chaos is powerless to control its reputation and place in the market without an injunction. Since Chaos has shown a *prima facie* case of a likelihood of confusion between the Chaos Lacrosse Marks and the Junior Marks, Chaos's loss of control over its intellectual property, customer reputation, and goodwill is sufficient to support the entry of a preliminary injunction. Chaos has no adequate remedy at law for such injury.

43. Here, the balance of the equities tips heavily in favor of Chaos. On information and belief, Defendant Premier will, unless enjoined, continue to mislead the public into believing that its Chaos lacrosse team is sponsored by, approved by, endorsed by, affiliated with, associated with,

or originated by Plaintiff Chaos and will continue to infringe Plaintiff's Chaos Lacrosse Marks by using Plaintiff's Marks or confusingly similar variations thereof to identify its competing lacrosse goods and services, in violation of the Lanham Act and Texas law. Further, on information and belief, Premier has knowingly and intentionally engaged in unlawful conduct and has knowingly and intentionally caused confusion. By contrast, Plaintiff has spent over 10 years and thousands of dollars to build its brand, reputation, and goodwill under the name "Chaos Lacrosse."

44. The public interest would be well served by a preliminary injunction, because the public has an interest in preventing confusion about lacrosse goods services and whether such services are approved by, associated with, or originated by Chaos. Also, the public has a strong interest in *fair competition* in the marketplace and a strong interest in the consistent enforcement of federal laws and Texas laws governing trademark infringement and unfair competition.

45. Following a trial on the merits, Chaos is entitled to a permanent injunction enjoining Premier and its officers, agents, servants, representatives, employees, and all those persons in active concert or participation with them from:

(i) Representing that Premier's services are in any way sponsored by, endorsed by, approved by, affiliated with, associated with, or originated by Chaos; and,

(ii) Using "Chaos" or any confusingly similar variations thereof, alone or in combination with other words, terms, names, symbols, or devices, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, or in advertising or signage, in meta tag data (including, for example, in connection with search engine optimization techniques), or otherwise, to market, advertise, or identify Premier or its competing lacrosse goods and services.

## VI. REQUEST FOR RELIEF

46. For these reasons, Plaintiff Chaos Lacrosse, LLC respectfully asks the Court to:

(a) Issue a preliminary injunction in accordance with 15 U.S.C. § 1116(a), enjoining Premier and its officers, agents, servants, representatives, employees, and all those in active concert or participation with Premier as set forth in Plaintiff's Application for Preliminary Injunctive Relief, including, <u>at a minimum</u>, enjoining Premier from: using CHAOS as a team name or using the Junior Marks in advertising, in connection with competitions, branding of merchandise, sale of services, including coaching and related services in conjunction with its junior academy and junior lacrosse program(s), and from using the CHAOS name in the United States;

(b) Enter an order that Premier has engaged in unfair competition by using Plaintiff's Marks;

(c) Enter an order that Premier has infringed Plaintiff's Marks;

(d) Enter an order that Premier has been unjustly enriched by its use of Plaintiff's Marks;

(e) Order Premier to provide an accounting of all sales, revenues, and profits from Premier's CHAOS-branded goods and services;

(f) Award to Chaos all of Premier's profits from the aforesaid acts of unfair competition, trademark infringement, and unjust enrichment, in accordance with Texas law and 15 U.S.C. § 1117(a);

(g) Award to Chaos its actual, exemplary, and treble damages and/or any additional or other compensatory sum as the court shall find to be just, according to the circumstances of the case, in accordance with Texas law and 15 U.S.C. § 1117(b);

(h) Award to Chaos all costs of this action, in accordance with Texas law and 15 U.S.C. § 1117(a);

(i) Find this case to be exceptional, declare Chaos to be the prevailing party, and award Chaos its reasonable attorneys' fees, in accordance with 15 U.S.C. § 1117(a)-(b);

(j) Issue a permanent injunction in accordance with Texas law and 15 U.S.C. § 1116, enjoining Premier and its officers, agents, servants, representatives, employees, and all those persons in active concert or participation with Premier from the acts described in paragraph 101 of this Complaint;

(k) Direct Premier to file with the Court and serve on Chaos within thirty days after service on Premier of any injunction, a report in writing under oath setting forth in detail the manner and form in which Premier has complied with the injunction, in accordance with 15 U.S.C. § 1116(a);

(l) Order that all materials in Premier's possession or control bearing any of Plaintiff's Marks, including signs, promotional items, and promotional literature, be surrendered for destruction, in accordance with 15 U.S.C. § 1118;

(m) Award to Chaos pre-judgment and post-judgment interest at the maximum allowable interest rate(s); and

(n) Grant to Chaos such other and further relief, at law or in equity, to which it is justly entitled.

Dated: May 4, 2023

                                Respectfully submitted,

                                */s/ Decker Cammack*
                                Decker A. Cammack
                                Texas Bar No. 24036311
                                dcammack@whitakerchalk.com
                                WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
                                301 Commerce Street, Suite 3500
                                Fort Worth, Texas  76102
                                Tel:  817-878-0500

                                Elvin E. Smith, III
                                Texas Bar No. 00784995
                                elvinsmith@siebman.com
                                SIEBMAN LAW, LLP
                                300 N. Travis Street
                                Sherman, TX  75090
                                Tel: (903) 870-0070
                                Fax: (903) 870-0066

                                **ATTORNEYS FOR PLAINTIFF**