**United States District Court**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CHAOS LACROSSE, LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:23-cv-00399 |
| v. § | Judge Mazzant |
| § | |
| PREMIER LACROSSE LEAGUE, INC. § | |
| § | |
| *Defendant.* § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Application for Preliminary Injunctive Relief (Dkt. #7). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's Application for Preliminary Injunctive Relief (Dkt. #7) should be **DENIED**.

**BACKGROUND**

**I.      Factual History**

    **A.  Chaos Lacrosse**

This case arises in the context of a trademark dispute over the term "Chaos" in the sport of lacrosse. Chaos Lacrosse, LLC ("Chaos") is a youth lacrosse club based in Frisco, Texas (Dkt. #7 at p. 2; Dkt. #12 at p. 7). Chaos runs club lacrosse teams for lacrosse players between the third and twelfth grades of school (Dkt. #12 at p. 7). The club's operations extend through North Texas, Oklahoma, and the surrounding areas (Dkt. #7 at p. 2). However, Chaos's teams play in lacrosse tournaments across the United States (Dkt. #22). It began operations in June 2013 (Dkt. #7 at p. 2).

Chaos owns two trademarks that are at issue in this case, service mark Reg. Nos. 6,617,481 and 6,617,482:

 

(Dkt. #12, Exhibit 4; Dkt. #12, Exhibit 5). Chaos first commercially (and noncommercially) used each of these trademarks on January 15, 2014 (Dkt. #12, Exhibit 4; Dkt. #12, Exhibit 5). The club filed each mark on November 16, 2018 and each mark became registered on January 18, 2022 (Dkt. #12, Exhibit 4; Dkt. #12, Exhibit 5). Chaos claims to use these marks as "marks in commerce to provide coaching services, including services attendant thereto, such as instruction, organization, team structure, travel planning and execution, tournament play and other related activities for youth lacrosse players" (Dkt. #7 at p. 2). Both marks are within International Class 41, where Reg. No. 6,617,481 possesses the listed use of "[c]oaching in the field of sports" (Dkt. #12, Exhibit 5). Reg. No. 6,617,482 possesses the listed use of "professional coaching services in the field of lacrosse" (Dkt. #12, Exhibit 4).

Most of Chaos's equipment sales and advertising occur through online sources. Rather than using a traditional retailer, Chaos sells its equipment through its website (Dkt. #7 at p. 11). Chaos also has a presence on X (formerly and commonly known as Twitter), Instagram, and Facebook (Dkt. #7 at p. 11).

### B. Premier Lacrosse League

Defendant Premier Lacrosse League, Inc. ("PLL") is an American professional lacrosse league (Dkt. #12 at p. 8). The league was founded in 2019 and currently consists of eight teams (Dkt. #12 at p. 8). One of PLL's eight teams is called "Chaos LC" (Dkt. #12 at p. 8). Chaos has either won or appeared in PLL's championship games from 2020 to 2022 (Dkt. #12 at p. 8). PLL owns two trademarks related to Chaos LC that are at issue in this case, service mark Reg. Nos. 6,048,870 and 6,048,885:



(Dkt. #7, Exhibit 2; Dkt. #7, Exhibit 3). PLL first commercially (and noncommercially) used each of these trademarks in May 2019 (Dkt. #7, Exhibit 2; Dkt. #7, Exhibit 3). The league filed the marks on February 25 and 26, 2019, respectively, and each mark became registered on May, 5, 2020 (Dkt. #7, Exhibit 2; Dkt. #7, Exhibit 3). Both marks are within International Classes 25 and 41 (Dkt. #7, Exhibit 2; Dkt. #7, Exhibit 3). Within Class 25, both marks possess the listed use of "[c]lothing intended to create an association with a professional lacrosse team" (Dkt. #7, Exhibit 2; Dkt. #7, Exhibit 3). Within Class 41, both marks possess the listed use of "[e]ntertainment services, namely, organizing and conducting athletic competitions and games in the field of lacrosse" (Dkt. #7, Exhibit 2; Dkt. #7, Exhibit 3).

PLL sells its merchandise and advertises through various sources. PLL streams lacrosse games through ABC and ESPN (Dkt. #12 at p. 8). The league also sells tickets to attend its games (Dkt. #12 at p. 8). PLL sells its merchandise directly through its online store and at games (Dkt. #12 at pp. 8, 20). The league also advertises through social media, with relatively large followings on X, TikTok, YouTube, Instagram, Threads, and Facebook (Dkt. #12 at p. 22).

Paul Rabil, a co-founder and the President of PLL, describes Chaos LC as one of PLL's "signature teams" and notes that Chaos LC won the league championship in 2021 (Dkt. #12, Exhibit 3 ¶ 8). Although Rabil does not describe how much money PLL has invested into Chaos LC, he states that PLL "has invested tens of millions of dollars every year in its product and employs hundreds of people across the nation" (Dkt. #12, Exhibit 3 ¶ 16). He further states that PLL's "media promotion, creation of merchandise, the coaching staff and players that are associated with each team, and the fans who provide the PLL's revenue are heavily linked to the trademarks for each team, one of which is Chaos LC" (Dkt. #12, Exhibit 3 ¶ 16). "PLL sells itself . . . through brand loyalty to a team, which requires logos and word marks identifiable to fans" (Dkt. #12, Exhibit 3 ¶ 19). Additionally, Rabil claims that the "inability to use the word mark and logo would cause significant harm to the PLL by damaging its ability to provide its promised product to its fans, thereby damaging its goodwill" (Dkt. #12, Exhibit 3 ¶ 21).

Beyond its eight-team lacrosse league, PLL also runs two programs where it hosts youth sports camps (Dkt. #12 at p. 9). The first program, PLL Academy, occurs on various weekends across the United States (Dkt. #12 at p. 9). Rabil describes the PLL Academy as "offer[ing] extensive year-round training for youth lacrosse" (Dkt. #22). The second program, "PLL Junior Championships," is held in Florida and Arizona (Dkt. #12 at p. 9). The PLL Junior Championships

are held for about four or five weekends at about two days each (Dkt. #12 at p. 9; Dkt. #12, Exhibit 3 ¶ 10). One team at each PLL Junior Championship is called the "Chaos Jr." (Dkt. #22).

### C. Interaction Between Chaos Lacrosse and the Premier Lacrosse League

Chaos's history with PLL dates back to 2019 when Jason Gildea, the founder of Chaos, made a phone call to PLL. During that phone call, he stated that Chaos "was confused with [Chaos LC's] name" and that Chaos would like to find a way to work together with PLL because "it's been about growing the game" (Dkt. #22).[1] Chaos first became aware of Chaos LC's name in February 2019, prior to this phone call (Dkt. #22).

In 2020, about one year later, Gildea sent an email to PLL regarding further cooperation (Dkt. #22). The ensuing exchange resulted in Chaos becoming a member of PLL's Verified program (Dkt. #22).

PLL's Verified program works with youth lacrosse clubs to "aim[] at building networks of youth lacrosse organizations" (Dkt. #12 at p. 11). Chaos joined this program in 2020, when only five youth clubs were in the program (Dkt. #22). However, Chaos left this program after about one year because it felt that it received minimal benefits (Dkt. #22).

Chaos claims that multiple instances demonstrating "confusion regarding the similarity and/or perceived affiliation between [Chaos] . . . and PLL" have occurred on social media (Dkt. #7 at p. 12). Chaos's Twitter handle is @ChaosLacrosse and PLL's Twitter handle is @PLLChaos (Dkt. #7 at pp. 11–12). Chaos claims the following tweets from February 26, 2023 and September 12, 2022 demonstrate confusion:

---

[1] Chaos's first interaction with PLL arguably dates back to 2016, when an accomplished lacrosse player, Kyle Harrison, assisted with Chaos's tryouts (Dkt. #22). Harrison later became an employee of PLL (Dkt. #22). Chaos gave Harrison equipment bearing the Chaos logo or word mark (Dkt. #22). However, Harrison was not an employee at PLL at the time PLL decided upon the name of Chaos LC (Dkt. #22).

5

 

(Dkt. #7 at p. 12). On July 31, 2022, Chaos claims that confusion between it and PLL occurred (Dkt. #7 at p. 11). Chaos "held a tryout at BF Philips Park in Frisco Texas, on the same date PLL was hosting a youth clinic at the same facility" (Dkt. #7 at p. 11). Chaos claims "[d]uring check-in, six players showed up to [Chaos's] tryout instead of the PLL clinic they had registered for due to confusion created by [Chaos's] players wearing reversible 'Chaos Lacrosse' jerseys. Gildea had to direct them to the PLL event" (Dkt. #7 at p. 11). Additionally, Chaos states that "[l]ater, two professional lacrosse players also mistook Plaintiff's event for the PLL event they were attending" (Dkt. #7 at p. 11).

Chaos also claims that PLL has been and still is selling merchandise through its website that infringes upon Chaos's word mark (Dkt. #7 at p. 13). The allegedly infringing products consist of (Chaos's word mark is placed above for comparison):



(Dkt. #7 at p. 13).

## II.     Procedural History

On May 4, 2023, Chaos brought suit against PLL for common law unfair competition, unjust enrichment under Texas law, and under the Lanham Act for trademark infringement and unfair competition (Dkt. #1 at ¶¶ 24–37). Chaos requested that the Court provide both preliminary and permanent injunctive relief to prevent PLL from "using 'Chaos' or any confusingly similar variation thereof" (Dkt. #1 at ¶¶ 38–46). PLL timely filed its answer, denying liability to Chaos (Dkt. #6).

On August 9, 2023, Chaos filed Plaintiff's Application for Preliminary Injunctive Relief (Dkt. #7), requesting that the Court enjoin PLL from:

> using Plaintiff's Marks, including "CHAOS," "CHAOS LC," "CHAOS LACROSSE," and any confusingly similar variations thereof, anywhere in the

>United States; and filing any additional trademark applications that use the word "CHAOS" in any manner associated with the sport of lacrosse.

(Dkt. #7). PLL timely filed its response (Dkt. #12). Chaos timely filed its reply (Dkt. #14). PLL timely filed its sur-reply (Dkt. #18). On September 26, 2023, the Court held a hearing regarding Chaos's motion (Dkt. #22).

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

Before addressing the factors to determine whether a preliminary injunction is appropriate, the Court first considers PLL's defenses of the statute of limitations and laches. Then, the Court only considers the factor of whether irreparable harm has occurred because that factor is dispositive. Further, no findings in this order will bind either party in a motion for summary judgment or at trial.

I. **Statute of Limitations**

Chaos's cause of action for trademark infringement against PLL is not barred by the statute of limitations. PLL claims that the statute of limitations for trademark infringement under the Lanham Act in Texas is four years (Dkt. #12 at pp. 10–11). It claims that Chaos's action is statutorily time-barred because both PLL filed for registration of its trademarks and Chaos knew of such infringement over four years before Chaos filed the instant action (Dkt. #12 at p. 11).

In response, Chaos claims that trademark infringement under the Lanham Act is a "continuing tort," where each act of infringement constitutes a new cause of action (Dkt. #14 at p. 2). Therefore, Chaos claims that no statute of limitations bars its action because PLL is continuing its infringement (Dkt. #14 at p. 2).

In Texas, trademark infringement under the Lanham Act has a four-year statute of limitations. *Edmark Indus. SDN. BHD. v. S. Asia Int'l (H.K.) Ltd.*, 89 F. Supp. 2d 840, 846 (E.D. Tex. 2000) (citing TEX. CIV. PRAC. & REM. CODE § 16.004). However, trademark infringement under the Lanham Act in Texas constitutes a continuing tort, where "'[e]ach subsequent violation is a separate event, separately actionable, which begins anew the running of the statute of limitations.'" *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1165–66 (S.D. Tex. 2016) (quoting *Horshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 813 (Tex. App.—Austin 2001, no pet. h.)).

Both parties agree that PLL continues to use its "Chaos" trademarks (Dkt. #7 at p. 13; Dkt. #12 at p. 8). Therefore, the statute of limitations does not bar Chaos's entire action because trademark infringement under the Lanham Act is a continuing tort. Rather, the statute of

9

limitations only applies to PLL's alleged infringement that occurred more than four years before PLL filed its complaint (See Dkt. #1).

**II.    Laches**

PLL does not succeed on its defense of laches against Chaos's motion for a preliminary injunction due to PLL's lack of undue prejudice from Chaos's delay. "Laches is an inexcusable delay that results in prejudice to the defendant." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 489 (5th Cir. 2008). Laches has three elements: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Id.* at 490.

**A.  Delay in asserting one's trademark rights**

The parties dispute the extent to which a plaintiff's delay in seeking injunctive relief justifies the application of laches (Dkt. #14 at pp. 2–3; Dkt. #18 at pp. 1–3). Chaos argues that the Court should not apply laches because of the "*much more truncated* passage of time" of the delay in this suit, than in *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, where the laches did not preclude the issuance of a permanent injunction (Dkt. #14 at pp. 1–2). No. 4:19-CV-358-ALM, 2022 WL 3008501, at *4–6 (E.D. Tex. July 28, 2022). PLL argues that the Court should apply laches to this case because Chaos delayed opposing PLL's use of the "Chaos" name and trademarks for four years (Dkt. #12 at pp. 11–12).

Chaos's reliance on *Gibson Brands, Inc.* is misplaced because an unexcused delay of approximately four years is sufficient to support a laches defense in the context of a preliminary injunction. Chaos is seeking a preliminary injunction in this case (Dkt. #7 at p. 16). *Gibson Brands, Inc.*, a case where this Court issued a permanent injunction, is distinguishable from this case

10

because courts treat laches differently in the contexts of preliminary injuctions and permanent injunctions. *See* 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:31 (5th ed. 2023) ("A lesser quantum of laches will suffice as a defense to a preliminary injunction than for a final injunction.") (citing *My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934)).

Chaos's delay of approximately four years may support a defense of laches. Chaos first learned of PLL's use of "Chaos" in February 2019 (Dkt. #7 at p. 16). Then, Chaos did not file its motion for preliminary injunction until August 9, 2023 (Dkt. #7). Courts have denied preliminary injunctions due to delays shorter than four years. *See*, *e.g.*, *M-I LLC v. Argus Green LLC*, No. 2:10-CV-24-DF-CE, 2010 WL 11527419, at *4 (E.D. Tex July 13, 2010) (denying motion for preliminary injunction filed at least six months after the plaintiff learned of the defendant's allegedly infringing activities); *BeatStars, Inc. v. Space Ape Ltd.*, 624 F. Supp. 3d 681, 689 (N.D. Tex. 2022) (denying motion for preliminary injunction where the plaintiff did not file its motion for over two and a half years after first alerting the defendant of its allegedly infringing conduct).

### B. Lack of excuse for the delay

Chaos' delay is unexcused and supports a defense of laches because Chaos does not offer any excuse for its delay in seeking a preliminary injunction. PLL argues that Chaos's delay in seeking a preliminary injunction was unexcused (Dkt. #12 at p. 13). Chaos has provided no excuse or explanation in response (Dkt. #14).

### C. Undue prejudice to the alleged infringer caused by the delay

First, PLL argues that its "national goodwill with its fans, vendors, and media partners will be irreparably damaged" (Dkt. #12 at p. 14). "The current and rising success of PLL's professional lacrosse league, and specifically, of its lacrosse club using the PLL Marks, can be attributed to

11

PLL's significant investments of time, sweat, and money, which include the hiring of coaches and athletes, who have their livelihoods built around the teams for which they play" (Dkt. #12 at p. 14). PLL claims that its fans "buy merchandise on PLL's website and at its in-person games [and] . . . pay real money to go to real stadia and see grown men play professional lacrosse; identical to going to Cowboy Stadium to see the Dallas Cowboys" (Dkt. #12 at p. 14).

In response to PLL's first argument, Chaos claims that the prejudice to PLL is greatly overstated because Chaos only is "trying to do is have one team stop advertising, merchandizing, and providing services under the Chaos Lacrosse brand" (Dkt. #14 at p. 3).

Second, PLL argues that Chaos acquiesced to PLL's use of its "Chaos" trademarks, which induced PLL's reliance, resulting in undue prejudice to PLL (Dkt. #18 at p. 3).[2] PLL claims this case mirrors *Conan Properties, Inc. v. Conans Pizza, Inc.* (Dkt. #18 at pp. 2–3). 752 F.2d 145, 152–53 (5th Cir. 1985). In *Conan Properties, Inc.*, the plaintiff, the owner of the intellectual property rights to the fictional character, Conan the Barbarian, either implicitly or explicitly authorized the defendant "to continue using the CONAN THE BARBARIAN name and image in connection with restaurant services in Austin." *Conan Props., Inc.*, 752 F.2d at 152–53. PLL specifically claims that "initiating contact with PLL, proposing a collaboration, and then becoming a member of the Verified program" satisfied the third element of laches (Dkt. #18 at pp. 2–3).

The third element of laches requires "undue prejudice to the alleged infringer caused by the delay." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013). Undue "'[p]rejudice encompasses actions by the defendant that it would not have taken or consequences it would not

---

[2] Although PLL plead the affirmative defense of acquiescence, it only discussed acquiescence in the briefing over Chaos's motion for a preliminary injunction for the first time in its sur-reply (Dkt. #6 at p. 7; Dkt. #18 at pp. 2–3). The Court views PLL as not having raised acquiescence as a distinct issue in its sur-reply, but rather suggesting that facts of this case demonstrate reliance by PLL for the purposes of laches (*See* Dkt. #18 at pp. 2–3).

12

have suffered had the plaintiff brought suit promptly.'" *Id.* at 625 (quoting 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:12 (4th ed. 2001)).[3] "'Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark.'" *Abraham*, 708 F.3d at 625 (quoting 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:12 (4th ed. 2001)).

Unlike *Conan Properties, Inc.*, the facts of this case do not suggest that Chaos's actions induced PLL's reliance. 752 F.2d 145. In *Conan Properties, Inc.*, Conan Properties, Inc. ("CPI") owned a federally registered trademark for "Conan the Barbarian." *Id.* at 148. A pizza restaurant in Austin called "Conans Pizza" had "menus, signs, promotional material, specialty items, and general decor feature[ing] a barbarian-like man who closely resembled" CPI's Conan character. *Id.* A major shareholder of CPI, deCamp, stopped by the restaurant, "spoke with [one of its owner], and identified himself as one of the creators of the CONAN character. He wished [the owner] success with his business and had a photograph taken of Strader and himself in front of one of the restaurant's signs. Later, deCamp sent Strader a copy of the photograph, on which he wrote: 'With best wishes to Jerry Stader and Scott Leist from one of Conan's creators—L. Sprague deCamp.'" *Id.* The Fifth Circuit found that these facts supported the jury's "implicit conclusion that Conans relied upon deCamp's conduct" because "through the affirmative acts of [] deCamp, one of its agents, CPI implicitly if not explicitly authorized Conans to continue using the CONAN THE BARBARIAN name and image in connection with restaurant services in Austin." *Id.* at 152.

---

[3] This test describes what the quoted text refers to as "economic or expectation-based prejudice." 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:12 (5th ed. 2023). However, the text also describes another type of prejudice, "[e]videntiary prejudice," which "encompasses such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died." *Id.*

Chaos's actions did not clearly rise to the level of implicitly or explicitly authorizing PLL to continue using its "Chaos" trademarks. In February 2019, Chaos reached out to PLL to arrange a collaboration (Dkt. #18 at p. 2). This collaboration took the form of Chaos joining PLL's Verified program (Dkt. #18 at p. 2). The evidence before the Court does not demonstrate that the Verified program possessed any association with PLL's Chaos team, at least while Chaos was involved with the program. When Chaos sought to collaborate with PLL, it sought to work with a professional lacrosse league, not the specific Chaos professional lacrosse team (Dkt. #12 at p. 8). Further, in *Conan Properties, Inc.*, the Fifth Circuit analyzed whether the record contained evidence to support the jury's finding of laches (specifically for the third element of laches), not whether Conans Pizza had suffered undue prejudice as a matter of law. 752 F.2d at 151–52. The evidence does not clearly demonstrate that Chaos either implicitly or explicitly authorized PLL to continue using its "Chaos" trademarks.

*Abraham v. Alpha Chi Omega* is instructive for determining whether undue prejudice is present in this case. *See generally Abraham*, 708 F.3d 614. In *Abraham*, various fraternity and sorority organizations received a partial preliminary injunction from the district court that precluded the defendant's business from using their trademarks. *Id.* at 617. The defendant asserted laches as an affirmative defense. *Id.* at 618. At trial, a jury found that the defendant had proved his laches defense. *Id.* at 619. The Fifth Circuit held that the evidence supported the jury's finding of undue prejudice because the defendant would not have rebuilt his business after multiple natural disasters and may have not invested millions of dollars into the business. *Id.* at 625. Although sales of the allegedly infringing items constituted only a small portion of the defendant's sales, the sale of these items drove the sale of other items. *Id.* Additionally, the defendant claimed that he would

have not rebuilt his business, costing millions of dollars, if he had known that the plaintiffs would later sue to enforce their trademark rights. *Id.*

The facts that PLL has provided do not demonstrate that PLL would suffer from undue prejudice caused by Chaos's delay. PLL has invested tens of millions of dollars into its league (Dkt. #12, Exhibit 3 ¶ 16). However, PLL has not claimed that it would not have invested large amounts of money into its league had it known that Chaos would sue it. PLL has also not described how much investment it has made in and relating to its "Chaos" trademarks. PLL further claims that its goodwill will be irreparably damaged if the Court issued the preliminary injunction. (Dkt. #12 at p. 14). However, PLL has not described how its goodwill would be so damaged, specifically what would occur if PLL was not able to use its "Chaos" trademarks (*See* Dkt. #12, Exhibit 3 ¶¶ 15–21, 23–25).[4] Unlike *Abraham*, PLL has not provided specific information detailing how it would suffer undue prejudice due to Chaos's delay. 708 F.3d at 625.

## III.     Irreparable Harm

To receive a preliminary injunction, Chaos must demonstrate that it will likely suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A statutory presumption under the Lanham Act arises where "[a] plaintiff seeking any such injunction [for trademark infringement] shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . in the case of a motion for a preliminary injunction . . . " 15 U.S.C. § 16. The Court will assume without deciding, that Chaos would receive the presumption of irreparable injury under Lanham Act. *See Cici Enters.,*

---

[4] The Court does not consider the PLL's playoffs and championship (having occurred in September 2023) to be relevant to the analysis of whether PLL would suffer undue prejudice because these events occurred before the Court issued this order (*See* Dkt. #12, Exhibit 3 ¶ 22).

*L.P. v. Fogel Enters., Inc.*, No. 3:22-cv-1202-E, 2023 WL 2731048, at *7 (N.D. Tex. Mar. 30, 2023). Chaos has also presented evidence suggesting that it, as the senior user of its trademarks, may lose the value of its trademarks, including control over its goodwill and reputation (Dkt. #7 at p. 3 n.2).

PLL argues that Chaos's delay demonstrates that it has not suffered any irreparable injury (Dkt. #12 at p. 15). Delay in seeking a preliminary injunction may neutralize the presumption of irreparable harm that arises after a plaintiff demonstrates a substantial likelihood of success on the merits in a trademark infringement case. *BeatStars, Inc.*, 624 F. Supp 3d at 688. In the context of preliminary injunctions, courts have found that the expiration of as little as several months between discovering an act of breach or infringement and seeking injunctive relief should factor into the court's analysis and could serve to rebut a claim of irreparable harm. *See Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *8 (E.D. Tex. Dec. 23, 2015) (collecting cases and finding undue delay where movant delayed approximately five months); *Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, No. 7:13–CV–664, 2014 WL 2918581, at *3 (S.D. Tex. June 26, 2014) (holding a multiple year delay in seeking injunctive relief "counsels against finding irreparable injury would result"); *Innovation Ventures, LLC v. Ultimate Lifestyles, LLC*, No. 4:08–CV–232, 2009 WL 1490588, at *3 (E.D. Tex. May 27, 2009) (finding nine-month delay between learning of infringing conduct and injunctive relief to be undue delay where plaintiff provided no explanation for the delay); *Ellipse Commc'ns, Inc. v. Caven*, No. 3-07-CV-1922-O, 2009 WL 497268, at *2 (N.D. Tex. Feb. 26, 2009) (denying an injunction because a seven-month delay, with no excuse, rebuts the presumption of irreparable harm).

Chaos did not attempt to stop PLL from using the "Chaos" name or trademarks from when it first learned of PLL's use of the name in February 2019 until August 16, 2022, when Chaos filed

16

a cancellation proceeding at the Trademark Trial and Appeals Board (Dkt. #7 at p. 16; Dkt. #22). Chaos did not then file its complaint in this cause until May 5, 2023 (Dkt. #1). This period of delay spanned approximately four years. Chaos has provided no excuse for this period of delay (Dkt. #7; Dkt. #14).

Chaos's unexcused delay between discovering an act of breach or infringement and seeking injunctive relief demonstrates that Chaos did not suffer irreparable harm for the purposes of a preliminary injunction. This unexcused delay negates the evidence that Chaos has put forth to demonstrate irreparable harm and rebuts the presumption that Chaos will suffer irreparable harm in the absence of preliminary relief. *See*, *e.g.*, *BeatStars, Inc.*, 624 F. Supp 3d at 688. Chaos has not demonstrated that it will likely suffer irreparable harm in the absence of preliminary relief. Therefore, Chaos is not entitled to a preliminary injunction.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Application for Preliminary Injunctive Relief (Dkt. #7) is hereby **DENIED.**

**IT IS SO ORDERED.**

SIGNED this 24th day of October, 2023.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE